BEFORE THE FIRST DIVISION, FEBRUARY 16, 1950

**No. 54030.**—The Danwill Company *v.* United States, protest 145372–K (New York).

COLE, Judge: A shipment of fish from Iceland was assessed with duty at one-half of 1 cent per pound under paragraph 719 of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802), and is claimed to be dutiable at one-fourth of 1 cent per pound under the same amended paragraph, the pertinent part of which reads as follows:

Cod, haddock, hake, pollock, and cusk:
  Neither skinned nor boned (except that the vertebral column may be removed):
    When containing not more than 43 per centum of moisture by weight _____ ½¢ per lb.
    When containing more than 43 per centum of moisture by weight _____ ¼¢ per lb.

The issue presented is purely one of fact. While the primary question relates to moisture content, there is also a dispute concerning the species of fish that was imported.

Plaintiff's case is based on the premise that the shipment in question, invoiced as "482 bales Salt Codfish," was in fact wet or pickled codfish, having a moisture content in excess of 43 per centum by weight.

Edward Beardsley, president of the plaintiff corporation, associated therewith for 12 years, testified that he is an expert on fish, having been to Nova Scotia and Newfoundland and seen "all types of fish." He purchased the merchandise in question and saw the shipment in his company's icebox shortly after the importation landed. He was very definite in his testimony that the imported commodity consisted of wet or pickled codfish, like plaintiff's illustrative exhibit 2, having a moisture content of "approximately 55% which is usual for this type of fish," and that it was not the dry type of codfish, plaintiff's illustrative exhibit 1, which invariably contains less than 43 per centum moisture by weight. There is a wide spread in the moisture content of both classes so that the "difference between these two fishes is very marked and readily discernible." Differentiating further between the two kinds of codfish, the witness stated that the dry fish is very hard, and the wet is very soft, and that the "dried type costs in the neighborhood of 22¢–25¢ per pound whereas the fish we purchased cost 14½¢ per pound."

Frank Spada, an employee of the plaintiff, with 32 years' experience as a fish skinner, testified that he skinned all of the fish in question and that none of them was the dry type.

Joseph V. Sample, the Government chemist, testified that the fish he tested contained a moisture content of 32.8 per centum by weight, and that the description, "DRY SALT POLLOCK," on his report, defendant's exhibit 3, was not his characterization of the merchandise but one given by the customs examiner from whom he received the sample.

Albert Zeiger, the customs examiner who advisorily classified the merchandise in question, testified that these fish were received in bales, and that the sample sent to the laboratory for determination of moisture content was received in a tin container from a customs inspector who had sent it to the appraiser's stores where the examiner saw it for the first time. The fish he received was a pollock.

Whether it was representative of the contents of the bale from which it came, he could not testify. The acceptance of a pollock for merchandise invoiced as "Salt Codfish" was explained in the statement that it "frequently happens in shipments from Iceland where cod and pollock are caught in the same nets and they are usually thrown in the same shipment and while it was probably called all codfish, they may have some pollock in there and the fish after examination and description was sent up to the chemist for a report on the moisture content." A pollock, plaintiff's illustrative exhibit 4, which plaintiff had "specially sent down from Nova Scotia as a sample," was identified by the customs examiner as the species of fish he received from the customs inspector, but the witness was unable to say whether the dry condition of said exhibit was representative of the sample sent to the Government chemist for the official test.

In rebuttal, the president of the plaintiff corporation, aforesaid Edward Beardsley, testified that there is a difference in shape between a codfish and a pollock, that they are not used interchangeably in the trade, and that "A pollock is not considered a codfish by the Food and Drug Administration."

The distinction between the two species is recognized in well-known lexicographic authorities. For instance, Funk & Wagnalls New Standard Dictionary contains these definitions:

cod, *n.* A gadoid food-fish (*Gadus morrhua*) of temperate northern seas, with rounded fins, well-developed barbel, and white lateral line.

pollack, *n.* A gadoid food-fish (genus *Pollachius*), resembling the true cod, but with lower jaw projecting and barbel obsolete.

The Encyclopaedia Britannica contains the following:

cod, * * * The cod (*Gadus morrhua*) in common with other fishes of the genus *Gadus*, has three dorsal and two anal fins; the upper jaw projects beyond the lower, and there is a barbel at the chin.

pollack, * * * a fish that is distinguished from others of the cod genus by the long pointed snout, and the prominent lower jaw, without a barbel; the colour is greenish, with yellow markings.

These definitions support plaintiff's testimony that cod and pollock possess peculiar physical characteristics, making them easily distinguishable, especially by one experienced with the two species of fish, like the witness Beardsley. His examination of the shipment is question disclosed only codfish with a moisture content of more than 43 per centum by weight.

In defendant's proof, there was no proper identification of the fish used by the Goverment chemist. The customs inspector who obtained the official sample was not called to establish its source. The omission assumes greater significance in the light of the admission by the customs examiner that said sample did not come under his observation until after its arrival at the appraiser's stores. Furthermore, the admitted knowledge by the customs examiner that it is not unusual for pollock and codfish to be commingled in shipments from Iceland might very well have been employed as a reason for further investigation and examination of the shipment, as desired by plaintiff, when a pollock was delivered as representative of an importation invoiced and entered as codfish.

While it is true, as stated in Government counsel's brief, that both cod and pollock are provided for in paragraph 719, as amended, *supra,* and subject to the same rates of duty, the developments in the present case, as discussed herein, reveal the importance of determining which of the two species was imported in the shipment under consideration.

For reasons hereinabove set forth, we find that the preponderance in weight of the evidence is favorable to plaintiff's contention. Accordingly, we hold the merchandise in question to be cod, neither skinned nor boned, and containing more than 43 per centum of moisture by weight, and classifiable under the specific

provision therefor in paragraph 719, as amended, *supra*, dutiable thereunder at one-fourth of 1 cent per pound, as claimed.

The protest is sustained and judgment will be rendered accordingly.